**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

| | |
|---|---|
| RICHARD LEE FOSTER,<br><br>  Plaintiff,<br>vs.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>  Defendant. | No. C 11-3063-MWB<br><br>**MEMORANDUM OPINION AND ORDER REGARDING REPORT AND RECOMMENDATION** |

_____

**TABLE OF CONTENTS**

*I.    INTRODUCTION ............................................................................. 1*

*II.   STANDARD OF REVIEW ................................................................ 3*

*III.  ANALYSIS ...................................................................................... 6*
    *A.   The RFC Determination ........................................................ 6*
    *B.   Foster's Ability To Perform Past Relevant Work ..................... 7*
    *C.   Listing 12.05C ..................................................................... 8*

*IV.   DIRECTIONS ON REMAND ........................................................... 10*

*V.    CONCLUSION ............................................................................... 10*

## *I.    INTRODUCTION*

This case is before me on a Report and Recommendation (docket no. 14) from United States Magistrate Judge Leonard Strand, regarding plaintiff Richard Lee Foster's claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"), pursuant to Titles II and XVI of the Social Security Act.

I quote from Judge Strand's Report And Recommendation to introduce the background of this case:

> Foster was born in 1957. AR 24. He completed his education through the tenth grade but left school in the eleventh grade because he was working and was behind on his credit hours. AR 25, 306, 357. He spent two or three years of grade school in special education due to reading difficulties. AR 26-27. He never completed his GED. AR 357. He received some training as a welder at Iowa Central Community College but testified that he did not make it through the welding course because he had difficulties with math. AR 27.
>
> Foster has work history, with records dating back to 1994. AR 144–45. His work history includes interruptions during periods of incarceration that resulted from convictions for lascivious acts with a child and operating while impaired, along with a parole violation. AR 305. From 2004 to 2006, Foster worked at Hog Slat, Inc., as a maintenance mechanic. AR 39, 144, 254. He testified that he was trained to repair hydraulic pumps and that he learned by watching others do the work. AR 39–40.
>
> Foster was sent back to prison in 2006 for a parole violation.[1] On February 6, 2008, he was admitted to Clarinda Regional Health Center for injuries arising from a blow to the head. AR 256–57, 263, 264, 300. He was discharged from the hospital the following day. AR 256. He was released from prison on December 17, 2008. AR 357.
>
> Foster applied for DIB on January 7, 2009, alleging disability beginning on December 31, 2007. AR 107–13. He applied for SSI on the same day, alleging the same onset

---

[1] There is some confusion in the record as to the year Foster was sent back to prison. He sometimes reported the year as being 2007. *See, e.g.*, AR 166. However, records show he was back in custody in 2006. AR 287–91, 299. Foster has indicated that being sent back to prison was the reason he stopped working. AR 166.

2

> date. AR 104–06. The Commissioner denied Foster's applications initially and again on reconsideration. Consequently, Foster requested a hearing before an Administrative Law Judge ("ALJ"). AR 53–66. On July 22, 2010, ALJ Jo Ann Draper held a hearing in which Foster and a vocational expert testified. AR 18–48. On September 22, 2010, the ALJ issued a decision finding Foster not disabled. AR 9–17.
>
> Foster sought review of this decision by the Appeals Council. AR 5. On October 7, 2011, the Appeals Council denied his request for review. AR 1–3. The ALJ's decision thus became the final decision of the Commissioner. AR 1; *see also* 20 C.F.R. § 416.1481.

Report And Recommendation at 1–2 (docket no. 14).

On October 17, 2011, Foster filed a complaint with this court, seeking review of the ALJ's decision. The case was referred to United States Magistrate Judge Strand, pursuant to 28 U.S.C. § 636(b)(1)(B), for the filing of a report and recommended disposition of the case. After briefing from Foster and the Commissioner, Judge Strand issued a Report And Recommendation on September 26, 2012 (docket no. 14), in which he found that the ALJ's decision was not supported by substantial evidence. Judge Strand recommended that the ALJ's decision be reversed and remanded for further proceedings. Neither Foster nor the ALJ filed an objection to Judge Strand's Report And Recommendation.

## II. STANDARD OF REVIEW

I review Judge Strand's Report And Recommendation pursuant to the statutory standards found in 28 U.S.C. § 636(b)(1):

> A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of

> the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28. U.S.C. § 636(b)(1) (2006); *see* Fed. R. Civ. P. 72(b) (stating identical requirements); N.D. Ia. L.R. 72, 72.1 (allowing the referral of dispositive matters to a magistrate judge but not articulating any standards to review the magistrate judge's report and recommendation). While examining these statutory standards, the United States Supreme Court explained:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 154 (1985). Thus, a district court may review *de novo* any issue in a magistrate judge's report and recommendation at any time. *Id.* If a party files an objection to the magistrate judge's report and recommendation, however, the district court *must* "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). In the absence of an objection, the district court is not required "to give any more consideration to the magistrate's report than the court considers appropriate." *Thomas*, 474 U.S. at 150.

In this case, no objections have been filed. As a result, I review Judge Strand's Report And Recommendation under a clearly erroneous standard of review. *See Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting when no objections are filed and the time for filing objections has expired, "[the district court judge] would only have to review the findings of the magistrate judge for clear error"); *Taylor v.*

*Farrier*, 910 F.2d 518, 520 (8th Cir. 1990) (noting the advisory committee's note to Fed. R. Civ. P. 72(b) indicates "when no timely objection is filed the court need only satisfy itself that there is no clear error on the face of the record"). The United States Supreme Court has explained that "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)) (internal quotation marks omitted).

While I examine Judge Strand's Report And Recommendation for clear error, I also review the Commissioner's decision to determine whether the correct legal standards were applied and "whether the Commissioner's findings are supported by substantial evidence in the record as a whole." *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007) (quoting *Haggard v. Apfel*, 175 F.3d 591, 594 (8th Cir. 1999)). Under this deferential standard, "[s]ubstantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002); *see also Page*, 484 F.3d at 1042. In reviewing the Commissioner's denial of benefits to determine if it is supported by substantial evidence, the court must "not only . . . consider evidence in the record that supports the Commissioner's determination, but also any evidence that detracts from that conclusion." *Draper v. Barnhart*, 425 F.3d 1127, 1130 (8th Cir. 2005) (citing *Hutsell v. Massanari*, 259 F.3d 707, 711 (8th Cir. 2001)). Nonetheless, even if a court "might have reached a different conclusion had [it] been the initial finder of fact," the Commissioner's decision will not be disturbed "unless the record contains insufficient evidence to support the outcome." *See Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007) (citations omitted).

### III.    ANALYSIS

Judge Strand made three central findings in his Report And Recommendation: (1) the ALJ's determination of Foster's RFC was supported by substantial evidence; (2) the ALJ's finding that Foster's RFC is compatible with his past relevant work as a construction worker is not supported by substantial evidence; and (3) the ALJ failed to consider whether Foster's IQ was medically equivalent to Listing 12.05C.  Because neither party has objected to Judge Strand's Report And Recommendation, I review these findings for clear error.

#### A.    *The RFC Determination*

A claimant's Residual Functional Capacity (RFC) is "what [the claimant] can still do" despite his or her "physical or mental limitations." 20 C.F.R. § 404.1545(a)(1). "The ALJ must determine a claimant's RFC based on all of the relevant evidence." *Frederickson v. Barnhart*, 359 F.3d 972, 976 (8th Cir. 2004). This includes "an individual's own description of [his] limitations," *McGeorge v. Barnhart*, 321 F.3d 766, 768 (8th Cir. 2003) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)).  The claimant's RFC "is a medical question," *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001), and must be supported by "some medical evidence." *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam).

Here, the ALJ properly assessed Foster's RFC; the ALJ considered Foster's allegations of disabling physical limitations and determined that Foster's complaints were not credible in light of the objective medical evidence. AR 15–16.  The ALJ's decision is supported by the infrequency with which Foster sought treatment for his physical impairments and the fact that his pain was generally controlled with over-the-counter medication.  AR 28, 229, 283–84, 289, 348.  There is evidence that Foster was able to work, but struggled to find a job due to his criminal background.  AR 384. There is also evidence that Foster did not consider his impairments disabling, since he

sought work throughout his alleged period of disability. AR 366, 371. The ALJ discounted Foster's mother's report because of inconsistencies with objective medical evidence and the fact that Foster's mother is not "a disinterested third party [witness]." AR 14; *see Choate v. Barnhart*, 457 F.3d 865, 872 (8th Cir. 2006). Regarding mental limitations, the ALJ gave Dr. Rogers's opinion "only minimal weight" because Dr. Rogers saw Foster only once and his suggested limitations are inconsistent with Foster's own reports. AR 15; *see, e.g.*, *Goff v. Barnhart*, 421 F.3d 785, 790–91 (8th Cir. 2005) ("[A]n appropriate finding of inconsistency with other evidence alone is sufficient to discount [a medical] opinion."). Since the ALJ considered the record as a whole and made permissible credibility determinations to resolve inconsistencies, I will not disturb the ALJ's determination. Because the ALJ's RFC determination was supported by substantial evidence, I agree with Judge Strand that it must be affirmed.

### B.   *Foster's Ability To Perform Past Relevant Work*

The ALJ was entitled to rely on the vocational expert's description of the demands of Foster's prior employment. *See* 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2). The ALJ properly found that Foster is able to perform the physical demands of his past relevant work. However, the ALJ failed to analyze the mental and emotional demands of Foster's past relevant work. The Eighth Circuit Court of Appeals considered the ALJ's requirements under Rule 82-62:

> Adequate documentation of past work includes factual information about those work demands which have a bearing on the medically established limitations. Detailed information about strength, endurance, manipulative ability, mental demands and other job requirements must be obtained as appropriate. This information will be derived from a detailed description of the work obtained from the claimant, employer, or other informed source. . . . In addition, for a claim involving a mental/emotional impairment, care must be taken to obtain a precise

7

> description of the particular job duties which are likely to produce tension and anxiety, e.g., speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work.

*Groeper v. Sullivan*, 932 F.2d 1234, 1238 (8th Cir. 1991) (quoting S.S.R. No. 82-62, Soc. Sec. Rep. 809, 811–12 (West 1983)). As Judge Strand found, there is nothing in the record to indicate the ALJ examined the mental and emotional demands of Foster's past employment. The ALJ determined that Foster's ability to interact with others is limited (AR 13), but she failed to develop the record concerning whether Foster's mental impairment is compatible with the performance of construction work. I agree with Judge Strand's recommendation that the Commissioner's decision be reversed and this case remanded for the ALJ to develop the record and make specific findings as to whether Foster has the RFC to meet the mental and emotional demands of his past relevant work as a construction worker. Additionally, I agree with Judge Strand that, on remand, the ALJ should develop the record and make specific findings concerning Foster's post-incarceration vocational rehabilitation efforts.

### C.  *Listing 12.05C*

The ALJ found that Foster "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments." AR 12. However, the ALJ expressly addressed Listings 12.02 (organic mental disorder) and 12.04 (affective disorder), but did not address Listing 12.05C, which provides:

> 12.05 *Mental retardation*: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied. . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. Foster contended that the ALJ erred by failing to consider whether his IQ was medically equivalent to Listing 12.05C. The burden is on the claimant to establish that he meets or equals a listing. *See Carlson v. Astrue*, 604 F.3d 589, 593 (8th Cir. 2010). To establish that his impairments meet or medically equal the Listing, Foster must demonstrate the symptomatology indicated in both the introductory material to Listing 12.05 and subsection C. *See Maresh v. Barnhart*, 438 F.3d 897, 899 (8th Cir. 2006) ("This court agrees with the Commissioner that the requirements in the introductory paragraph [of Listing 12.05C] are mandatory.").

Here, Foster clearly meets or equals two of the three criteria under Listing 12.05C, since he has a full scale IQ of 70 and the ALJ found he has other impairments that result in work-related limitations. AR 11, 309. Judge Strand properly found that there is evidence that may support a finding that Foster meets the third criterion, "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period." *See, e.g.*, AR 26–27 (Foster was placed in special education as a child) and AR 173–80, 192–99, and 220–27 (function reports). Because the ALJ failed to address Listing 12.05C or explain why it was ignored, I agree with Judge Strand that remand is appropriate for the ALJ to consider whether Foster's IQ was medically equivalent to Listing 12.05C.

## IV.  DIRECTIONS ON REMAND

On remand, the ALJ should (1) consider the mental and emotional demands of the construction worker position; (2) develop the record and make specific findings concerning Foster's post-incarceration vocational rehabilitation efforts; and (3) conduct an analysis of Listing 12.05C and make specific findings concerning Listing 12.05C.

## V.  CONCLUSION

THEREFORE, I find that the Commissioner's decision is not supported by substantial evidence in the record as a whole. Judge Strand recommended that the case be reversed and remanded for further proceedings and that judgment be entered in favor of Foster and against the Commissioner. I agree and thus **accept** Judge Strand's Report And Recommendation (docket no. 14). The Commissioner's decision is **reversed and remanded** for further proceedings consistent with this opinion. The clerk is directed to enter judgment in favor of Foster and against the Commissioner.

**IT IS SO ORDERED**.

**DATED** this 1st day of November, 2012.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA